Case No. 11-9557

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| PUBLIC SERVICE COMPANY OF NEW MEXICO, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Lisa Jackson, Administrator, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) ) ) |
| Respondents. | ) ) |

An Original Action in the Court of Appeals, challenging
a Federal Rule found at 76 Fed. Reg. 52,388 (Aug. 22, 2011)

## UNOPPOSED MOTION TO INTERVENE BY DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT, NATIONAL PARKS CONSERVATION ASSOCIATION, NEW ENERGY ECONOMY, SAN JUAN CITIZENS ALLIANCE AND SIERRA CLUB

## I.    INTRODUCTION

This case involves EPA's implementation of the Clean Air Act's regional haze requirements as they apply to the coal-fired San Juan Generating Station ("San Juan"), near Farmington, New Mexico.  The regional haze program requires pollution reductions from large industrial sources of pollution, such as coal-fired power plants, that impair visibility in national parks and wilderness areas.  These source-specific pollution reductions also yield important *local* co-benefits to public health, the environment, and the economy.  The aspiring intervenors[1] form a coalition of conservation and environmental justice groups ("Environmental Coalition") that is directly harmed by pollution from the San Juan Generation Station.  The Coalition's interests are not adequately protected by the existing parties.  The Environmental Coalition thus meets the requirements of Fed. R. App. P. 15(d) and Local Rule 15.2(B), and respectfully moves to intervene in support of

---

[1] Diné Citizens Against Ruining Our Environment ("Diné CARE"), National Parks Conservation Association ("NPCA"), New Energy Economy ("NEE"), San Juan Citizens Alliance ("SJCA") and Sierra Club.

Respondents United States Environmental Protection Agency and Administrator Lisa Jackson (collectively, "EPA") in this Petition for Review.

The petitioner, Public Service Company of New Mexico ("PNM"), has stated that it takes no position on this motion.  EPA has stated that it does not object to this motion.

## II.    REGULATORY BACKGROUND

One of the Clean Air Act's goals is to restore natural visibility conditions in the country's national park and wilderness areas by 2064. 42 U.S.C. §§ 7491, 7492; 40 C.F.R. § 51.308(d).  To attain this goal, the Act directs States to prepare state implementation plans ("SIPs") which include, *inter alia*, the imposition of best available retrofit technology ("BART") on certain major stationary sources that adversely affect visibility in national parks and wilderness areas, or so-called "Class I" areas.  40 C.F.R. § 51.308; *see also* 42 U.S.C. § 7472 (providing which areas shall be classified as "Class I" areas).

The State of New Mexico failed to meet its December 17, 2007 deadline to submit its regional haze SIP to EPA.  *See Approval and Promulgation of Implementation Plans; New Mexico; Federal Implementation Plan for Interstate Transport of Pollution Affecting Visibility and Best Available Retrofit Technology Determination*, 76 Fed. Reg. 491, 493 (proposed Jan. 5, 2011); *see also* 40 C.F.R. § 51.308(d)(1). EPA's formal finding to that effect triggered a two-year clock for EPA to issue a federal implementation plan ("FIP") or, in the alternative, approve a complete regional haze SIP from New Mexico.  *Id.*; *Finding of Failure to Submit State Implementation Plans Required by the 1999 Regional Haze Rule*, 74 Fed. Reg. 2392, 2393 (Jan. 15, 2009); *see* 42 U.S.C. § 7410(c).  Because New Mexico again failed to propose a SIP within those two years, EPA prepared a FIP and published its proposal for public comment on January 5, 2011.  76 Fed. Reg. 491.  After taking public comment, EPA published a final FIP on August 22, 2011.  *See Approval and Promulgation of Implementation Plans; New Mexico; Federal Implementation Plan for Interstate Transport of Pollution*

3

*Affecting Visibility and Best Available Retrofit Technology Determination*, 76 Fed. Reg. 52,388 (Aug. 22, 2011).

EPA's FIP imposes limits on emissions of NOx, SO$_2$, and sulfuric acid mist.  Finding that San Juan's emissions impair visibility in sixteen national park and wilderness areas, or "Class I" areas, the FIP makes a BART determination for the plant that would limit its NOx emissions to 0.05 pounds per million British thermal units ("lbs/MMBtu"), over a rolling 30-day average.  *Id*. at 52,439.  This limit would reduce the plant's NOx emissions by more than 80%.  *Id*. at 52,389.  The FIP also limits San Juan's sulfuric acid emissions to 2.6 x 10$^{-4}$ lbs/MMBtu on an hourly basis.  *Id*. at 52,440.  The FIP requires compliance with these limits by no later than September 21, 2016.  *Id*. at 52,439.

On September 16, 2011, PNM filed its petition with this Court seeking judicial review of EPA's BART determination for San Juan. Appellate Case: 11-9557, Document No. 01018714287.

## III.   FACTUAL BACKGROUND

### A.   San Juan's Pollution Load

The San Juan Generating Station is a 1,800-megawatt coal-fired power plant located near Farmington, New Mexico.[2]  Built between 1973 and 1982, the plant's four units emit millions of tons of air pollution every year.[3]  Last year, this plant emitted more than 11.7 million tons of carbon dioxide, more than 4 thousand tons of sulfur dioxide and more than 15 thousand tons of nitrogen oxides, according to EPA.  *Id*.  This large-scale pollution raises serious public health and environmental concerns.

Due to its location, which is adjacent to the Navajo Nation, the plant disproportionately impacts the Navajo people, thereby raising social justice concerns as well.  The local impacts of the plant are only exacerbated by pollution from the neighboring Four Corners Power

_____

[2] http://www.pnm.com/systems/sj.htm (last visited on October 14, 2011).
[3] http://camddataandmaps.epa.gov/gdm/index.cfm?fuseaction=emissions.wizard (last visited on Oct. 14, 2011).

Plant, which, according to EPA, is the largest single source of NOx emissions in the entire country.[4]

### B.     Impacts to National Parks and to the Ecosystem

San Juan's pollution adversely impacts visibility in our nation's national parks and wilderness areas.  EPA has identified 16 such pristine or "Class I" areas that are affected by San Juan's pollution load.  These are:  Arches National Park (UT); Bandelier Wilderness (NM); Black Canyon of the Gunnison Wilderness (CO); Canyonlands National Park (UT); Capitol Reef National Park (UT); Grand Canyon National Park (AZ); Great Sand Dunes National Monument (CO); La Garita Wilderness (CO); Maroon Bells Snowmass Wilderness (CO); Mesa Verde National Park (CO); Pecos Wilderness (NM); Petrified Forest National Park (AZ); San Pedro Parks Wilderness (NM); West Elk Wilderness (CO); Weminuche Wilderness (CO); and Wheeler Peak Wilderness (NM).  76 Fed. Reg. at 501, Table 6.  This haze impedes the

---

[4] http://www.epa.gov/region9/air/navajo/ (last visited on Oct. 13, 2011).

Environmental Coalition's members' enjoyment of these iconic landscapes. *See, e.g.,* Declaration of Kevin Dahl ("Dahl Decl."), attached as Exhibit B at 1: ¶2.

These same emissions have also been linked to a variety of other harms in national parks and the ecosystem. For example, nitrogen oxides combine with other pollutants and sunlight to create ground level ozone, also known as smog. *See* Dahl Decl. (Exhibit B) at p. 3. Ozone makes sensitive plants more susceptible to diseases and damage, inhibits plant growth and crop yields, and threatens biodiversity. *Id*. According to EPA, in the United States alone, ozone damage is responsible for approximately $500 million in reduced crop production each year. *Id*.

Sulfur dioxide and nitrogen oxide emissions also create acid rain and nitrogen deposition that damages not only sensitive ecosystems, but, also historical structures and monuments in national parks. *Id*. Acid rain is likewise responsible for weakening and killing plants and fish. *Id*.

## C.     Public Health Impacts

A well-established and growing body of scientific evidence links short-term exposures to nitrogen oxides ("NOx") with adverse respiratory effects.  These effects include airway inflammation in healthy people and increased respiratory symptoms in people with asthma.[5]  There is also a documented connection between breathing during periods of elevated short-term $NO_2$ concentrations and increased visits to emergency departments and hospital admissions for respiratory issues, especially asthma.[6]

Health-related impacts from human exposure to $SO_2$ are also well documented and include a range of respiratory impacts such as bronchoconstriction and increased asthma symptoms.[7]  Furthermore, when $SO_2$ is released into the air, some portion of it eventually becomes sulfur trioxide ($SO_3$), which, in turn, reacts with moisture in the air to

---

[5] http://www.epa.gov/air/nitrogenoxides/health.html (last visited Oct. 14, 2011).

[6] *Id.*

[7] http://www.epa.gov/air/sulfurdioxide/health.html (last visited Oct. 14, 2011).

form sulfuric acid (more commonly known as battery acid). According to the Agency for Toxic Substances and Disease Registry ("ATSDR"), "sulfuric acid and other acids are very corrosive and irritating and cause direct local effects on the skin, eyes, and respiratory and gastrointestinal tracts when there is direct exposure to sufficient concentrations."[8] And, according to the International Agency for Research on Cancer ("IARC"), "[o]ccupational exposure to strong-inorganic-acid mists containing sulfuric acid is carcinogenic to humans."[9]

## IV. ARGUMENT

### A. Legal Standard

An aspiring intervenor must state its interest in the case and explain why the existing parties cannot adequately represent those interests. Fed. R. App. P. 15(d); Local Rule 15.2(B)(1). As this Court

---

[8] http://www.atsdr.cdc.gov/phs/phs.asp?id=254&tid=47 (last visited on Oct. 14, 2011).
[9] http://monographs.iarc.fr/ENG/Monographs/vol54/volume54.pdf (last visited on October 6, 2011).

has made clear, "[t]he central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *San Juan County v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir.2001) (explaining that this Court "follows a somewhat liberal line in allowing intervention").

In short, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *San Juan County*, 503 F.3d at 1195 (internal quotation marks omitted). As explained below, the Environmental Coalition satisfies these requirements because it has local aesthetic, recreational, public health and economic interests that are not adequately represented by EPA.

## B.    The Environmental Coalition Represents Local Interests

Under Rule 15(d), a motion to intervene in a petition for review must be filed within 30 days of the filing of the petition,[10] and must contain a "concise statement of the interest of the moving party and the grounds for intervention."  Fed. R. App. P. 15(d).

The Environmental Coalition's interest in this matter is to ensure that the FIP's BART determination for San Juan not only protects its interest in improving visibility in nearby parks and wilderness areas, but also serves its members' local aesthetic, recreational and economic interests as well as their local public health and environmental justice interests.  The local nature of the Environmental Coalition's interests is demonstrated by the attached declarations and is described below.  *See* Declaration of Anna M. Frazier on behalf of Diné CARE ("Frazier Decl."), attached as Exhibit A; Dahl Decl. on behalf of NPCA, attached

---

[10] PNM filed its petition for review on September 16, 2011.  Appellate Case: 11-9557, Document No. 01018714287.  Because the thirtieth day after this date (October 16, 2011) falls on a Sunday, the filing period runs until the next day.  Fed. R. App. Proc. 26(a)(1)(C).  This motion is therefore timely.

as Exhibit B; Declaration of Mariel Nanasi on behalf of NEE ("Nanasi

Decl."), attached as Exhibit C; Declaration of Mike Eisenfeld on behalf

of SJCA ("Eisenfeld Decl."), attached as Exhibit D; Declaration of David

Van Winkle on behalf of Sierra Club ("Van Winkle Decl."), attached as

Exhibit E.

### C.    EPA Cannot Adequately Represent the Interests of the Environmental Coalition

Local Rule 15.2(B)(1) states that in addition to the requirements

of Fed. R. App. Proc. 15(d), "a nonparty motion must state the reasons

why the parties cannot adequately protect the interest asserted."  As

this Court has found, the government is ill-positioned to represent the

particular, localized interests of an aspiring intervenor.  *Utah Ass'n of*

*Counties*, 255 F.3d at 1254 (An intervenor's "showing is easily made

when the party upon which the intervenor must rely is the government,

whose obligation is to represent not only the interest of the intervenor

but the public interest generally, and who may not view that interest as

coextensive with the intervenor's particular interest.").  This is because

"[i]n litigating on behalf of the general public, the government is

obligated to consider a broad spectrum of views, many of which may

conflict with the particular interest of the would-be intervenor." *Id*. at

1256.

This case is no exception. If denied party status, the

Environmental Coalition would be forced to rely on EPA to represent

their interests in this case. However, EPA does not represent the

Environmental Coalition's particular, localized interests. Unlike EPA,

whose interest is to preserve its discretion and authority, the

Environmental Coalition's interests are grounded in deeply personal,

localized visibility and public health concerns, as well as concerns that

the true costs of coal combustion San Juan are being externalized onto

the broader public, including the Environmental Coalition and its

members. *See* Exhibits A-E.

Each of the Environmental Coalition's organizations has members

who live within the region. They and their families are directly and

adversely impacted by pollution from San Juan. *See* Nanasi Decl.

(Exhibit C); Eisenfeld Decl. (Exhibit D); Frazier Decl. (Exhibit A). The

Environmental Coalition's declarants also have an interest in

13

minimizing the local economic impacts of pollution from San Juan. *See* Van Winkle Decl. (Exhibit E); Dahl Decl. (Exhibit B); Frazier Decl. (Exhibit A). Strong pollution controls are needed to support tourism in the region's world-class outdoor recreational areas, including the 16 Class I areas affected by San Juan. For example, as explained by Mr. Eisenfeld, in 2008, national parks supported more than 18,000 local jobs and saw more than 8 million recreational visits. Eisenfeld Decl. (Exhibit D) at p. 3. In that same year, park visitors and staff contributed more than $721 million to local economies. *Id.* The local economic benefit of EPA's action also includes job creation resulting from installation of the modern pollution controls representing BART.

Given the location of San Juan, its proximity to other large sources of pollution, and the resulting disproportionate impact on residents of the nearby Navajo Nation, these local public health and economic impacts also raise undeniable environmental justice

14

interests[11] that the Environmental Coalition seeks to vindicate. *See*

Frazier Decl. (Exhibit A) at p. 1.  Faithful implementation of the Act's

visibility mandate in Class I areas offers the co-benefit of helping EPA

achieve its stated goal of "provid[ing] an environment where all people

enjoy the same degree of protection from environmental and health

hazards and equal access to the decision-making process to maintain a

healthy environment in which to live, learn, and work."[12]  EPA's action

also forces San Juan to internalize some of its externalized public

health costs (estimated to be $255 million per year)[13] and

environmental costs, which levels the playing field for renewable power

generation, such as solar and wind power – a key interest of the

Environmental Coalition. *See, e.g.,* Nanasi Decl. (Exhibit C) at p. 6: ¶11.

---

[11] "Environmental Justice is the fair treatment and meaningful involvement of all people regardless of race, color, national origin, or income with respect to the development, implementation, and enforcement of environmental laws, regulations, and policies." *See* http://www.epa.gov/environmentaljustice/basics/index.html (last visited on Oct. 14, 2011)

[12] *Id.*

[13] See Van Winkle Decl. (Exhibit E) at p. 3.

the outcome of this proceeding also potentially affects EPA's BART determination for the nearby Four Corners Power Plant, a plant that similarly impacts the Environmental Coalition's interests.

The Environmental Coalition's interests are often at odds with those of EPA. Members of the Environmental Coalition have frequently disagreed with – and challenged in rulemaking comments and court proceedings – EPA's actions and inaction under the Clean Air Act. *See, e.g.*, *Arizona Pub. Serv. Co. v. U.S. E.P.A.*, 562 F.3d 1116 (10th Cir. 2009) (San Juan Citizens Alliance and Sierra Club challenge of a FIP for the Four Corners Power Plant); *Sierra Club v. EPA*, 551 F.3d 1019 (D.C. Cir. 2008) (Sierra Club challenge of permitting exemptions for hazardous air pollution sources); *Natural Resources Defense Council v. EPA*, 489 F.3d 1364 (D.C. Cir. 2007) (Sierra Club challenge of hazardous air pollutant standards for plywood manufacturers); *Natural Resources Defense Council v. EPA*, 489 F.3d 1250 (D.C. Cir. 2007) (Sierra Club challenge of EPA air pollution standards for industrial boilers). Even here, the parties' legal interests diverge. For example, in

response to PNM's arguments, EPA may assert that its BART determination for San Juan resulted from the proper exercise of its discretion. *See* PNM's Docketing Statement (filed September 29, 2011) at pp. 5-6. The Environmental Coalition, by contrast, will argue that the San Juan BART determination represents the minimal standard of protection required by the Act and that EPA had discretion to issue far more protective pollution limits. Thus, although EPA and the Environmental Coalition may share the same basic objective – defense of EPA's FIP – the arguments that EPA and the Environmental Coalition will raise may very well be different.

In short, the Environmental Coalition cannot rely on EPA to present the full range of legitimate arguments available to oppose weakening of its BART determination for San Juan and, at the very least, to ensure that the Environmental Coalition's interests are fully represented in any mediation, settlement, or remedy proceedings that may occur. The Environmental Coalition more than meets its "minimal" burden to show inadequate representation. *Utah Ass'n of Counties*, 255 F.3d at 1253. "[A]n intervenor need only show the

17

*possibility* of inadequate representation." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) (citation omitted) (emphasis in original).

The Environmental Coalition respectfully submits that the Court's adjudication will therefore be assisted by hearing from leading non-governmental advocates – and beneficiaries – of the Clean Air Act's public health and environmental protections.

## V.     CONCLUSION

As explained above, the Environmental Coalition has met the requirements for intervention: Each group has an interest relating to the subject matter of this action that may be impaired by disposition in its absence, and that interest is not adequately represented by the existing parties.  See Fed. R. App. P. 15(d); Local Rule 15.2(B)(1).  On this basis, the Environmental Coalition respectfully requests intervention.

Respectfully submitted October 17, 2011.


s/ Suma Peesapati
Suma Peesapati (CA Bar #203701)
Earthjustice
426 17th Street, 5th Floor
Oakland, CA 94612
(510) 550-6725 (tel)
(510) 550-6749 (fax)
speesapati@earthjustice.org

Erik Schlenker-Goodrich (NM Bar #17875)
Western Environmental Law Center
208 Paseo del Pueblo Sur, #602
Taos, New Mexico 87571
(575) 613-4197 (tel)
(575) 751-1775 (fax)
eriksg@westernlaw.org

Attorneys for Applicants in Intervention
Diné CARE *et al.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, Diné Citizens Against Ruining Our Environment, National Parks Conservation Association, New Energy Economy, San Juan Citizens Alliance and Sierra Club all state that they have no parent corporations or entities. Because none of these organizations are publicly-traded corporations or entities that have issued stock, no publicly held corporation or entity owns ten percent of more of any of the organizations' stock.

s/ Suma Peesapati
Suma Peesapati

## CERTIFICATE OF DIGITAL SUBMISSION
## AND PRIVACY REDACTIONS

The undersigned certifies that:

(1) All required privacy redactions have been made; and

(2) This digital submission was scanned for viruses with Symantec

Endpoint Protection v11.0.6005.562, which was last updated on October

17, 2011. According to this program, this submission is free of viruses.

<u>s/ Suma Peesapati</u>
Suma Peesapati


## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2011, a copy of

this Unopposed Motion to Intervene by Diné Citizens Against Ruining

Our Environment, National Parks Conservation Association, New

Energy Economy, San Juan Citizens Alliance and Sierra Club was

served electronically on all parties to this matter, through the Court's

CM/ECF system.

<u>s/ Suma Peesapati</u>
Suma Peesapati